UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ROSEANNE M. CURRIER** | **CIVIL ACTION** |
| **VERSUS** | **No. 16-2793** |
| **ENTERGY CORPORATION EMPLOYEE BENEFITS COMMITTEE ET AL.** | **SECTION I** |

### ORDER AND REASONS

Before the Court is a motion[1] for partial dismissal filed by defendants. Plaintiff opposes the motion in part.[2] For the following reasons, the motion is granted in part and denied in part.

### BACKGROUND

Plaintiff Roseanne Currier ("Currier") is a former corporate jet pilot for defendant Entergy Services, Inc. ("Entergy Services"). Through her employment with Entergy Services, Currier was covered by two related disability plans, the Entergy Corporation Companies' Benefits Plus Long Term Disability Plan ("Primary Plan") and the Disability Plan for Corporate Pilots of Entergy Corporation and Subsidiaries ("Pilots Plan"). The Primary Plan and the Pilots Plan are linked. Coverage under the Pilots Plan terminates when coverage under the Primary Plan terminates.

In 2011, Currier was deemed unfit to fly because of cognitive defects. She thereafter began receiving disability benefits from both the Primary Plan and the

---

[1] R. Doc. No. 11.
[2] R. Doc. No. 12.

Pilots Plan. In 2014, Unum—the administrator of the Primary Plan—terminated Currier's benefits. Defendant Entergy Corporation Employee Benefits Committee ("Entergy Benefits Committee")—the administrator of the Pilots Plan—also terminated Currier's benefits. Currier timely appealed the denial of benefits under each plan to the plan's administrator and the administrative appeals were denied. She filed a second appeal of the denial of benefits under the Pilots Plan which appeal was also denied.

Currier then filed this lawsuit against Entergy Services, the Entergy Benefits Committee, and Entergy Corporation, the parent company of Entergy Services, claiming defendants violated several provisions of the Employee Retirement Income Security Act of 1974 ("ERISA") when they terminated her benefits under the Pilots Plan. Specifically, Currier alleges defendants (1) improperly denied her claim for benefits under the Pilots Plan in violation of ERISA § 502(a)(1)(B); (2) breached their fiduciary duties in violation of ERISA § 502(a)(3); and (3) failed to timely provide ERISA plan documents upon request in violation of ERISA § 502(c).

Defendants move to dismiss the second and third claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Defendants also move to dismiss Entergy Services and Entergy Corporation as improper defendants. Currier's ERISA § 502(a)(1)(B) claim against the Entergy Benefits Committee is not challenged in defendants' motion.[3]

---

[3] Defendants represent in their motion that, assuming the Court grants their motion to dismiss, Currier's remaining claim can be resolved on cross-motions for summary judgment.

2

**LAW AND ANALYSIS**

I. **Standard of Law**

The Federal Rules of Civil Procedure permit a defendant to seek a dismissal of a complaint based on the "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a motion to dismiss, the Court accepts as true the well-pled factual allegations in the complaint, and construes them in the light most favorable to the plaintiff. *Hunter v. Berkshire Hathaway, Inc.*, No. 15-10854, 2016 WL 3710253, at *3 (5th Cir. July 11, 2016) (citation omitted). The court generally must not consider any information outside the pleadings in deciding the motion, *Sullivan v. Leor Energy*, LLC, 600 F.3d 542, 546 (5th Cir. 2010), however "a court may consider documents outside the complaint when they are: (1) attached to the motion; (2) referenced in the complaint; and (3) central to the plaintiff's claims." *Maloney Gaming Mgmt.*, 2011 WL 5903498 (5th Cir. 2011).

For the complaint to survive a motion to dismiss, the facts taken as true must state a claim that is plausible on its face. *Brand Coupon Network, L.L.C. v. Catalina Marketing Corp.*, 748 F.3d 631, 637-38 (5th Cir. 2014). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Culbertson v. Lykos*, 790 F.3d 608, 616 (5th Cir. 2015) (citation omitted)

3

(internal quotation marks omitted). A complaint is insufficient if it contains "only labels and conclusions, or a formulaic recitation of the elements of a cause of action." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (citation omitted) (internal quotation marks omitted). The Court cannot grant a motion to dismiss under Rule 12(b)(6) "unless the plaintiff would not be entitled to relief under any set of facts that [she] could prove consistent with the complaint." *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004).

## II. Section 502(a)(3) Claim

Defendants move to dismiss Currier's Section 502(a)(3) claim on the ground that Fifth Circuit precedent forbids the assertion of such a claim when a claim for benefits under Section 502(a)(1)(B) exists, regardless of whether the Section 502(a)(1)(B) claim has been asserted or will prevail. Currier concedes that this was once the rule in the Fifth Circuit, but contends that the U.S. Supreme Court's 2011 decision in *CIGNA Corp. v. Amara*, 563 U.S. 421 (2011), implicitly overruled it. For the following reasons, the Court agrees that a plaintiff can alternatively plead a Section 502(a)(1)(B) claim and a Section 502(a)(3) claim, at least where there is a possibility that equitable relief may be necessary to make the plaintiff whole.

Section 502(a)(1)(B) of ERISA states that a plan participant or beneficiary may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

Section 502(a)(3) states that a civil action may be brought:

4

> by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

29 U.S.C. § 1132(a)(3).

In *Varity Corp. v. Howe*, the Supreme Court declared viable the plaintiffs' Section 502(a)(3) claims against a plan administrator where the plaintiffs alleged that they relied on the administrator's false assurances in agreeing to change to a different benefits plan that ultimately reduced their coverage. 516 U.S. 489, 515 (1996). In its discussion regarding the proper scope of Section 502(a)(3) claims, the Supreme Court observed that Section 502(a)(3) serves as a "safety net, offering appropriate equitable relief for injuries caused by violations that [Section] 502 does not elsewhere adequately remedy." *Id.* at 512. It further explained that "we should expect that where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be appropriate." *Id.* at 515 (internal quotations omitted).

Subsequent Fifth Circuit decisions interpreted *Varity* as creating a rule that plaintiffs can sue pursuant to Section 502(a)(3) for breach of fiduciary duty only "when no other appropriate equitable relief is available." *Tolson v. Avondale Indus., Inc.*, 141 F.3d 604, 610 (5th Cir. 1998). In other words, the rule in this circuit has been that "[w]hen a beneficiary wants what was supposed to have been distributed under a plan, the appropriate remedy is a claim for denial of benefits under § 502(a)(1)(B) of ERISA rather than a fiduciary duty claim brought pursuant to §

5

502(a)(3)." *McCall v. Burlington N./Santa Fe Co.*, 237 F.3d 506, 512 (5th Cir. 2000); *see also Walsh v. Lifer Ins. Co. of N. Am.*, No. 08-791, 2008 WL 2026107, at *2 (E.D. La. May 9, 2008) ("Stated differently, the *Varity* Court held that an ERISA plaintiff may bring a private action for breach of fiduciary duty only where there is no other remedy available under 29 U.S.C. § 1132.").

The practical result has been that plaintiffs asserting Section 502(a)(1)(B) claims in conjunction with Section 502(a)(3) claims have often had the latter claims dismissed as a matter of law. *See, e.g.*, *Ctr. for Restorative Breast Surgery, L.L.C. v. Humana Health Ben. Plan of Louisiana, Inc.*, No. 10-4346, 2015 WL 4394034, at *5-6 (E.D. La. July 15, 2015); *Taylor v. Ochsner Found. Clinic Hosp.*, No. 09-4179, 2010 WL 3528624, at *6 (E.D. La. Sept. 3, 2010); *Walsh v. Lifer Ins. Co. of N. Am.*, No. 08-791, 2008 WL 2026107, at *2-4 (E.D. La. May 9, 2008); *Sullivan v. Monsanto Co.*, 555 F. Supp. 2d 676, 683-85 (E.D. La. 2008).

Currier argues that this line of cases is no longer viable after the Supreme Court's decision in *CIGNA Corp. v. Amara*. In *Amara*, the Supreme Court considered a district court's ruling in favor of pension plan beneficiaries who alleged that they were misled by an inaccurate summary plan description ("SPD") into accepting a reduction in benefits. 563 U.S. 421 (2011). After concluding that the SPD was in fact misleading, the lower court attempted to provide relief under Section 502(a)(1)(B) by reforming the benefits plan to reflect the terms of the SPD. *Id*. at 425, 434. Although the plaintiffs had also asserted a Section 502(a)(3) claim, the district court declined

6

to decide whether that claim was sustainable, finding it unnecessary in light of its holding that Section 502(a)(1)(B) provided an appropriate remedy. *Id.*

Upon review, the Supreme Court vacated the lower court judgment and held that reformation of the plan was an equitable remedy not available under Section 502(a)(1)(B). *Id.* at 445. The Court reasoned that Section 502(a)(1)(B) only empowers courts to award beneficiaries the benefits they are due "under the terms of [their] plan," and that benefits promised in an SPD but not contained within the plan itself are not benefits due "under the terms of the plan." *Id.* at 436. Accordingly, the Supreme Court held that reformation of the plan to match the terms of the SPD was an equitable remedy only available under Section 502(a)(3), *id.* at 438-442, and it remanded the case for a determination of whether such relief was appropriate under that Section, *id.* at 445.

According to Currier, the *Amara* decision permits pleading a Section 502(a)(3) claim despite the presence of a Section 502(a)(1)(B) claim. Currier finds support for her interpretation in post-*Amara* decisions that have considered *Amara*'s impact on this issue. For example, in *Peterson v. Liberty Life Assurance Co. of Boston*, the U.S. District Court for the Northern District of Mississippi recently concluded, in light of *Amara*, that alternative pleading of Section 502(a)(1)(B) claims and Section 502(a)(3) claims is permissible—notwithstanding what the court characterized as internal disagreement in the Fifth Circuit on the issue. *See* No. 1:15-CV-00204-SA-DAS, 2016 WL 3849693, at *1 (N.D. Miss. July 13, 2016). In reaching its decision, the *Peterson* court discussed *Amara*'s relevance:

7

> *Amara* illustrates that the line between legal relief and equitable relief is not always boldly drawn, and the legal and factual bases for a plaintiff's claims may come into clearer focus as the litigation proceeds. Had the district court in *Amara* dismissed the breach of fiduciary duty claim at the pleading stage based on the mere presence of the legal claim for benefits, the equitable relief sanctioned by the Supreme Court would not have been available. Thus, the outcome Defendant seeks here would be inconsistent with the practice in *Amara*.

*Id.* at *3 (citations omitted).

Multiple circuit courts have come to the same conclusion. Notably, the Second, Eighth, and Ninth Circuits have all recently interpreted the *Amara* decision as clarifying that a Section 502(a)(3) claim is not automatically undermined by the presence of a Section 502(a)(1)(B) claim. *See New York State Psychiatric Association, Inc. v. UnitedHealth Group*, 798 F.3d 125, 134 (2d Cir. 2015) (stating, in light of the *Amara* decision, that "it is important to distinguish between a cause of action and a remedy under § 502(a)(3)" because "*Varity Corp.* did not eliminate a private cause of action for breach of fiduciary duty when another potential remedy is available"); *Silva v. Metro. Life Ins. Co.*, 762 F.3d 711, 727 (8th Cir. 2014) (holding, in light of *Amara*, that "*Varity* only bars duplicate recovery and does not address pleading alternate theories of liability"); *id.* at 730 (Gruender, J., concurring in part and dissenting in part) ("I agree with the court that Silva was permitted to plead simultaneously claims under both § 1132(a)(1)(B) and § 1132(a)(3) [because] at this early stage of litigation, an ERISA plaintiff may plead claims under both provisions in the alternative."); *Moyle v. Liberty Mut. Ret. Ben. Plan*, 823 F.3d 948, 960 (9th Cir. 2016), *as amended on denial of reh'g and reh'g en banc* (Aug. 18, 2016) ("While *Amara* did not explicitly state that litigants may seek equitable remedies under [Section 502](a)(3) if [Section

502](a)(1)(B) provides adequate relief, *Amara*'s holding in effect does precisely that.").[4]

In contrast to the other circuits which have examined this issue, the Fifth Circuit's post-*Amara* case law is less than definitive. On the one hand, some cases seem consistent with the results reached by the other circuits. *See Gearlds v. Entergy Servs., Inc.*, 709 F.3d 448, 452 (5th Cir. 2013) ("Even assuming it is dictum, however, we give serious consideration to this recent and detailed discussion of the law by a majority of the Supreme Court."); *Singletary v. United Parcel Serv., Inc.*, 828 F.3d 342, 350 (5th Cir. 2016) ("We need not resolve whether subsection (a)(2) or (a)(3) is the better fit [because] [t]he claim could have been brought by referring to both sections."). On the other hand, other recent decisions—without mentioning or citing *Amara* at all—reflexively follow the Fifth Circuit's pre-*Amara* case law. *See, e.g.*, *Hollingshead v. Aetna Health Inc.*, 589 F. App'x 732, 737 (5th Cir. 2014) (citing *Tolson*, 141 F.3d at 610). One could argue that this issue remains an open question. *See Gonzalez v. Aztex Advantage*, 547 F. App'x 424, 426 n.3 (5th Cir. 2013) ("Because we determine that the district court properly concluded that Gonzalez abandoned his equitable remedy claim and properly denied his motion to withdraw his non-objection, we need not decide whether *Amara* would have entitled Gonzalez to any relief.").

---

[4] The parties dispute whether *Rochow v. Life Ins. Co. of N. Am.*, 780 F.3d 364, 366 (6th Cir. 2016), supports Currier's position.

This Court agrees with the *Peterson* court that a plaintiff can simultaneously plead claims under several subsections of Section 502(a) and "have time to develop [her] trial strategy and preserve alternative grounds for relief until a later stage in the litigation." 2016 WL 3849693, at *2 (citation omitted).[5] This result is compelled by the Supreme Court's *Amara* decision. "Had the district court in *Amara* dismissed the breach of fiduciary duty claim at the pleading stage based on the mere presence of the legal claim for benefits, the equitable relief sanctioned by the Supreme Court would not have been available." *Peterson*, 2016 WL 3849693, at *3. At least where there is a possibility that equitable relief may be necessary to make the plaintiff whole, dismissal of the plaintiff's Section 502(a)(3) claim is inappropriate post-*Amara*. That conclusion, however, does not end the inquiry.[6]

Defendants argue that even if a plaintiff can sometimes pursue a Section 502(a)(1)(B) claim and a Section 502(a)(3) claim simultaneously, Currier cannot do so here because, assuming her factual allegations are correct, she will not require equitable relief to make her whole. Defendants assert that Currier "will be

---

[5] This result is not foreclosed by *Varity*, which read in light of *Amara* does no more than provide that equitable relief under Section 502(a)(3) is impermissible where a legal remedy is obtained pursuant to Section 502(a)(1)(B). 516 U.S. at 515.
[6] The Court recognizes that reasonable minds could disagree as to the proper reading of the Fifth Circuit's less-than-clear post-*Amara* precedent. Accordingly, should defendants so desire, the Court would be willing to consider a motion to certify this opinion for interlocutory appeal under 28 U.S.C. § 1292(b). Though the Court cautions the defendants that, as of now, the Court is not convinced that the criteria for such an appeal is met.

recompensed fully by an award of benefits under [Section] 502(a)(1)(B)."[7] The Court disagrees.

In addition to alleging improper denial of benefits, the complaint alleges that defendants breached their fiduciary duties by providing Currier with a Q & A document which contradicted the Pilots Plan both affirmatively and by omission.[8] The complaint also alleges that defendants made material misrepresentations concerning the terms and operation of the Pilots Plan.[9] Accordingly, Currier asserts one set of claims related to the decision to deny benefits under the terms of the Plan, for which Section 502(a)(1)(B) would in fact provide an adequate remedy, but she also asserts a separate set of claims related to her detrimental reliance on alleged misrepresentations made by Entergy Services agents as fiduciaries. The latter claims can be remedied only through Section 502(a)(3). Moreover, Currier alleges that the Q & A document is an SPD, a characterization not contested by defendants, which *Amara* explicitly held is not part of the benefits plan itself and therefore cannot form the basis for a Section 502(a)(1)(B) claim for benefits due under "the terms of the plan." 563 U.S. at 436.

Because it is unclear at this point whether the Q & A document serves as an SPD and whether the breach of fiduciary duty claims regarding deliberate misrepresentations are sufficiently distinct from the claims requesting enforcement of the plan so as not to effectively constitute "repackaging" of the latter, the Court

---

[7] R. Doc. No. 16, at 6 n.4.
[8] R. Doc. No. 1, at 17 ¶ 45.
[9] R. Doc. No. 1, at 17 ¶ 46.

cannot decide whether Currier's claim is more accurately grounded in the Pilots Plan itself or in enforcement of the Q & A document. Accordingly, defendants' motion to dismiss Currier's Section 502(a)(3) claim must be denied.

### III.    Section 502(c) Claim

The second claim which defendants seek to dismiss is Currier's claim for statutory damages under ERISA Section 502(c) based on defendants' alleged failure to provide timely claim documentation as required by the statute. 29 U.S.C. § 1132(c)(1)(B). Section 502(c) allows courts to award penalties on a per-day basis if a plan administrator fails to timely comply with a document request under Section 1024(b)(4). 29 U.S.C. § 1024(b)(4). Section 1024(b)(4) provides that plan "administrator[s] shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated." *Id.*

Currier, through counsel, made multiple written requests for plan documents at different stages during the administrative appeal process and concedes "that a number of documents were timely produced."[10] However, she claims that defendants are liable for failing to timely provide upon request (1) certain documents which defendants had already provided in response to earlier requests, (2) documents relating to her individual claim for benefits, including documents generated during her administrative appeals, and (3) the Entergy Benefits Committee's bylaws.

---

[10] R. Doc. No. 12, at 6.

Defendants respond that the information sought by Currier either had already been timely provided once in response to a 2011 request by Currier or was not required to be provided.

First, the Court agrees that defendants should not be subject to penalties for failing to timely provide required documents that had already been timely produced in response to a previous request. "[T]he purpose of the penalty is to provide plan administrators with an incentive to timely respond to requests for documents." *Kerr v. Charles F. Vatterott & Co.*, 184 F.3d 938, 947 (8th Cir. 1999). "Under ERISA, penalties are assessed at the sole discretion of the Court." *Seal v. Maverick Claims, LLC*, No. 14-245, 2015 WL 4509629, at *1 (E.D. La. July 24, 2015) (citing 29 U.S.C. § 1132(c)(1)). The Court finds that the purpose of the "penalty" provision of ERISA would not be furthered by the imposition of penalties under such circumstances. The Court therefore declines to award penalties on that basis in this case.

Second, the Court agrees with defendants that they were not required to produce documents relating to Currier's individual claim for benefits or the committee bylaws. As stated, Section 1024(b)(4) requires a plan administrator to provide upon request "a copy of the latest updated summary, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, *or other instruments under which the plan is established or operated*." (emphasis added). The Fifth Circuit has held that the final, catch-all provision of Section 1024(b)(4) only requires a plan administrator to produce the "formal legal documents that govern a plan." *Murphy v. Verizon Commc'ns, Inc.*, 587

F. App'x 140, 144 (5th Cir. 2014).  Moreover, "[a]s a penalty provision [this section] must be strictly construed." *Fisher v. Metro. Life Ins. Co.*, 895 F.2d 1073, 1077 (5th Cir. 1990).

Documents that were generated during the course of Currier's claim processing or her administrative appeals are not "formal legal documents that govern" her benefits plan.  Indeed, the basis for Currier's appeals was her belief that she had been denied benefits in violation of the formal legal documents which govern her plan.  It follows that documents generated during and subsequent to the appeals cannot themselves be "documents that govern" within the meaning of the statute.  *See Jordan v. Tyson Foods, Inc.*, 312 F. App'x 726, 734 (6th Cir. 2008) (internal quotations and citation omitted) ("[T]he term 'other instruments' does not include documents used in the ministerial day-to-day processing of individual claims.").

Neither can Currier advance a claim against defendants based on their untimely provision of the Entergy Benefits Committee's bylaws.[11]  Given the Fifth Circuit's narrow construction of "other instruments" as limited to "formal legal documents that govern a plan," the fact that the bylaws govern the Entergy Benefits Committee's functions and not the beneficiary plans themselves is fatal to Currier's claim.  *See Bd. of Trustees of the CWA/ITU Negotiated Pension Plan v. Weinstein*, 107 F.3d 139, 143 (2d Cir. 1997) (cited favorably in *Murphy*, 587 F. App'x at 143-44)

---

[11] The Court notes that Currier does not mention the bylaws in her complaint—they are mentioned for this first time in her memorandum in opposition to defendants' motion.  Currier does, however, offer to amend her complaint if necessary to plead this basis for recovery with more specificity. R. Doc. No. 12, at 8.

(construing the catch-all provision "to refer to formal documents that govern the plan, not to all documents by means of which the plan conducts operations"). For these reasons, the motion for dismissal of this claim is granted.

## IV.  Dismissal of Entergy Services and Entergy Corporation

Defendants also move to dismiss Entergy Services and Entergy Corporation from this action on the ground that ERISA only provides Currier with a claim against the Entergy Benefits Committee, the plan administrator. Currier does not oppose dismissing Entergy Corporation, but argues that Entergy Services is liable because it acted as a plan administrator and effectively made the decision to terminate her benefits.

Because Currier does not oppose it, the Court will dismiss Entergy Corporation without prejudice. As for Entergy Services, the Court concludes that pursuant to the Fifth Circuit's decision in *Musmeci v. Schwegmann Giant Super Markets, Inc.*, 332 F.3d 339, 349 (5th Cir. 2003), dismissal would be inappropriate at this stage of the proceedings.

An employer is not liable to a plaintiff under ERISA simply because the plaintiff's benefits plan accrued through the employer. *Gearlds v. Entergy Servs., Inc.*, 709 F.3d 448, 453 (5th Cir. 2013). In *Schwegmann*, the Fifth Circuit explained that an ERISA claimant may only bring suit against an employer when the plan has no meaningful existence apart from the employer, and when the employer made the decision to deny benefits. 332 F.3d at 349-50. This standard has been labelled a "restrained functional test," whereby "a party will be exposed to liability only if it

15

exercises 'actual control' over the administration of the plan." *LifeCare Mgmt. Servs. LLC v. Ins. Mgmt. Adm'rs Inc.*, 703 F.3d 835, 844 (5th Cir. 2013) (citing *Schwegmann*, 332 F.3d at 349-50).

In other words, "[i]f an entity or person other than the named plan administrator takes on the responsibilities of the administrator, that entity may also be liable for benefits." *Id.* at 845. However, the Fifth Circuit has found that an employer without "final authority" to make benefits decision and with "no role in [the plan administrator's] formal decision making and appeals process" is not a proper defendant for a denial of benefits claim. *Armando v. AT & T Mobility*, 487 F. App'x 877, 879 (5th Cir. 2012).

The complaint alleges that Entergy Services executives administered the plan, that Entergy Services effectively made the decision to deny Currier benefits, and that certain high level Entergy Services employees made the decision regarding Currier's administrative appeals. As distinct from *Gearlds*, where the plaintiff did not allege that the employer "sponsored or administered the plan, or made any decisions with respect to his benefits," 709 F.3d at 453, Currier is explicitly alleging those facts, with supportive documentation. Taken together and viewed in the light most favorable to the plaintiff, the allegations are sufficient to state a claim that Entergy Services is one and the same as the Entergy Benefits Committee, such that the Committee has "no meaningful existence separate" from Entergy Services. *See Schwegmann*, 332 F.3d at 350. Dismissal of Entergy Services would therefore be inappropriate at this stage of the proceedings.

## CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that defendants' motion is **GRANTED IN PART** and **DENIED IN PART**. The motion is **GRANTED** insofar as plaintiff's claims under ERISA Section 502(c), 29 U.S.C. § 1132(c)(1)(B), are **DISMISSED WITH PREJUDICE**. The motion is also **GRANTED** insofar as all claims against Entergy Corporation are **DISMISSED WITHOUT PREJUDICE**. The motion is **DENIED** in all other respects.

New Orleans, Louisiana, October 14, 2016.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**