**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **ROSEANNE M. CURRIER** | **CIVIL ACTION** |
| **VERSUS** | **No. 16-2793** |
| **ENTERGY CORPORATION EMPLOYEE BENEFITS COMMITTEE ET AL.** | **SECTION I** |

**ORDER AND REASONS**

Before the Court is a motion[1] for partial summary judgment filed by the defendants. For the following reasons, the motion is granted.

**BACKGROUND**

Plaintiff Roseanne Currier ("Currier") is a former corporate jet pilot for defendant Entergy Services, Inc. ("Entergy Services"). Through her employment with Entergy Services, Currier was covered by two related disability plans, the Entergy Corporation Companies' Benefits Plus Long Term Disability Plan ("Primary Plan") and the Disability Plan for Corporate Pilots of Entergy Corporation and Subsidiaries ("Pilots Plan" or "the Plan"). The Primary Plan and the Pilots Plan are linked.

A section of the Pilots Plan titled "When Do Your Disability Benefits Cease" provides that "Disability benefits under the Plan will be discontinued upon the earliest of the following dates or events: . . . 5. the date your disability benefits under the Primary LTD Plan terminate or cease." R. Doc. No. 33-2, at 6. The Pilots Plan also provides that benefits cease upon "2. your failure to remain under the regular

[1] R. Doc. No. 33.

care and treatment of a qualified physician to the extent your disability is based on Total Disability or loss of medical certificate for reasons other than health or medical condition." R. Doc. No. 33-2, at 6.

In 2011, Currier was deemed unfit to fly because of cognitive defects. She thereafter began receiving disability benefits from both the Primary Plan and the Pilots Plan. In 2014, Unum—the administrator of the Primary Plan—terminated Currier's benefits. Defendant Entergy Corporation Employee Benefits Committee ("Entergy Benefits Committee")—the administrator of the Pilots Plan—also terminated Currier's benefits. The Entergy Benefits Committee terminated the benefits pursuant to the two provisions of the Pilots Plan cited above, namely that the plaintiff's coverage under the Primary Plan had ceased and that the plaintiff had failed to complete the cognitive rehabilitation program of neuropsychologist Dr. Bracy and had therefore failed to remain under the regular care and treatment of a qualified physician. Currier timely appealed the denial of benefits under each plan to the respective plan administrators and the administrative appeals were denied. She filed a second appeal of the denial of benefits under the Pilots Plan which appeal was also denied.

Currier then filed this lawsuit against Entergy Services, the Entergy Benefits Committee, and Entergy Corporation, the parent company of Entergy Services, claiming defendants violated several provisions of the Employee Retirement Income Security Act of 1974 ("ERISA") when they terminated her benefits under the Pilots Plan. The complaint alleges that defendants (1) improperly denied her claim for benefits under the Pilots Plan in violation of ERISA § 502(a)(1)(B); (2) breached their

fiduciary duties in violation of ERISA § 502(a)(3); and (3) failed to timely provide ERISA plan documents upon request in violation of ERISA § 502(c).

In response to a previous motion filed by defendants, the Court dismissed the Section 502(c) claim and dismissed Entergy Corporation from the lawsuit. The Court refused to dismiss the Section 502(a)(3) claim, however, holding that under the U.S. Supreme Court's recent decision in *CIGNA Corp. v. Amara*, 563 U.S. 421 (2011), a plaintiff may alternatively plead a Section 502(a)(1)(B) claim and a Section 502(a)(3) claim where there is a possibility that equitable relief may be necessary to make the plaintiff whole. *See Currier v. Entergy Corp. Employee Benefits Comm.*, No. CV 16-2793, 2016 WL 6024531, at *2 (E.D. La. Oct. 14, 2016). As it remains unclear whether such equitable relief would be necessary in this case, the Court declined to dismiss the Section 502(a)(3) claim at that time. In its previous opinion, the Court also ruled that dismissal of Entergy Services was not warranted, as the complaint sufficiently alleges that Entergy Services is one and the same as the Entergy Benefits Committee.

Entergy Services and the Entergy Benefits Committee now move for summary judgment on the plaintiff's Section 502(a)(1)(B) claim. They argue that because the decision to terminate Currier's benefits under the Pilots Plan was legally correct as a matter of law, Currier's claim to enforce the terms of the Pilots Plan must be dismissed.

## STANDARD OF LAW

Summary judgment is proper when, after reviewing the pleadings, the discovery and disclosure materials on file, and any affidavits, the court determines there is no genuine dispute of material fact. *See* Fed. R. Civ. P. 56. "[A] party seeking

summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The party seeking summary judgment need not produce evidence negating the existence of material fact, but need only point out the absence of evidence supporting the other party's case. *Id.*; *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986).

Once the party seeking summary judgment carries its burden pursuant to Rule 56, the nonmoving party must come forward with specific facts showing that there is a genuine dispute of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The showing of a genuine issue is not satisfied by creating "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). Instead, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party responding to the motion for summary judgment may not rest upon the pleadings, but must identify specific facts that establish a genuine issue. *Id.* The nonmoving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's] favor." *Id.* at 255; *see also Hunt v. Cromartie*, 526 U.S. 541, 552 (1999).

**ANALYSIS**

Section 502(a)(1)(B) of ERISA states that a plan participant or beneficiary may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). "Generally, in suits brought under 29 U.S.C. § 1132(a)(1)(B), district courts review the denial of a long-term disability-benefits claim de novo." *Burell v. Prudential Ins. Co. of Am.*, 820 F.3d 132, 137 (5th Cir. 2016). But where the benefits plan gives the plan administrator complete discretion and authority to interpret its terms, the plan administrator's decision to deny benefits is reviewed for an abuse of discretion. *Id.*; *see also Gomez v. Ericsson, Inc.*, 828 F.3d 367, 373 (5th Cir. 2016).

The Pilots Plan provides that the Entergy Benefits Committee "has authority to make rules and regulations necessary for the administration of the Plan, to construe and interpret the Plan and to make sure that all participants are treated equitably." R. Doc. No. 33-3, at 7. It further states that "[t]he Plan Administrator through the Director, Employee Benefits shall have full power and authority to enforce, construe, interpret and administer the Plan," and that "[a]ll interpretations under the Plan and all determinations of fact made in good faith by the Plan Administrator shall be final and binding on the participants and other interested persons." R. Doc. No. 33-3, at 8. Accordingly, the Entergy Benefits Committee's

decision to deny Currier benefits must be reviewed for an abuse of discretion. *See Gomez*, 828 F.3d at 373.[2]

"An abuse of discretion occurs when the plan administrator acted arbitrarily or capriciously." *Burell*, 820 F.3d at 138 (quotation omitted); *see also Gomez*, 828 F.3d at 373. "Therefore, to survive summary judgment, [the plaintiff] must raise a genuine dispute of material fact that [the plan administrator's] denial of his long-term disability-benefits claim was arbitrary or capricious." *Id.*

The Fifth Circuit has outlined the two-step analysis to be followed when determining whether a plan administrator abused its discretion when construing plan terms. "The first stage of judicial review of an ERISA determination is determining whether the administrator's decision is legally correct." *Gomez*, 828 F.3d at 373. If it is, then the inquiry is at an end. *Id.* "In determining whether an ERISA determination is legally correct, [courts] consider: (1) whether the administrator has given the plan a uniform construction, (2) whether the interpretation is consistent with a fair reading of the plan, and (3) any unanticipated costs resulting from different interpretations of the plan." *Id.* (quotations omitted). "The most important factor to consider" is "whether the administrator's interpretation is consistent with a

[2] Plaintiff's arguments to the contrary are unconvincing. Currier incorrectly argues that where a summary plan description ("SPD") and the plan itself contain identical language, the plan administrator's interpretation of the plan language "is not given any particular deference." *See* R. Doc. No. 37, at 16 (citing *Koehler v. Aetna Health Inc.*, 683 F.3d 188-89 (5th Cir. 2012)). *Koehler* acknowledged that when resolving plan ambiguities in a case where an SPD and a benefits plan contain identical language, the deferential standard of review that applies to the administrator's interpretation of the plan does not apply when interpreting the SPD. *See* 683 F.3d at 188-89.

fair reading of the plan." *Gosselink v. Am. Tel. & Tel., Inc.*, 272 F.3d 722, 727 (5th Cir. 2001).

If the court finds that the administrator's interpretation was not legally correct, then it must resolve whether the administrator has abused its discretion. A plan administrator abuses its discretion where the decision is not "based on evidence, even if disputable, that clearly supports the basis for its denial." *Lain v. UNUM Life Ins. Co. of Am.*, 279 F.3d 337, 342 (5th Cir. 2002) (quotation omitted). Again, a court must find that an administrator has abused its discretion only when the plan administrator acted arbitrarily or capriciously. *Burell*, 820 F.3d at 138. A decision is arbitrary only if made without a rational connection between the known facts and the decision or between the found facts and the evidence. *Id.* When analyzing whether an administrator has abused its discretion in its interpretation of the plan, a court must weigh four factors: (1) the plan's internal consistency under the administrator's interpretation, (2) any relevant regulations, (3) the factual background underlying the decision, and (4) any indication of lack of good faith. *Lain*, 279 F.3d at 346.

Without reaching the question of whether Currier's failure to complete the cognitive rehabilitation program constituted an independent basis for terminating Currier's benefits, the Court concludes that the Entergy Benefits Committee's decision to terminate Currier's benefits under the Pilots Plan because her benefits under the Primary Plan had ceased was legally correct. The Pilots Plan unambiguously provides for the termination of benefits "upon the earliest of" certain dates or events occurring. R. Doc. No. 33-2, at 6. One of those events is "the date [the

beneficiary's] disability benefits under the Primary LTD Plan terminate or cease." R. Doc. No. 33-2, at 6. There is no qualifying language. "An administrator's interpretation is consistent with a fair reading of the plan if it construes the plan according to the plain meaning of the plan language." *LifeCare Mgmt. Servs. LLC v. Ins. Mgmt. Adm'rs Inc.*, 703 F.3d 835, 841 (5th Cir. 2013) (quotations omitted). As it is undisputed that Currier's benefits were only terminated following the termination of her benefits under the Primary Plan and that the Primary Plan explicitly provides for termination under such circumstances, the termination was consistent with the plain meaning of the plan language and was legally correct.[3]

Currier's arguments for a contrary result are not convincing. She emphasizes that the Pilots Plan provides three different ways in which a participant may qualify for benefits, *see* R. Doc. No. 33-2, at 5, and that she qualified for benefits under all three requirements. But the section of the Pilots Plan providing for the cessation of benefits does not take into account the manner in which the beneficiary qualified for disability benefits under the Plan. *See* R. Doc. No. 33-2, at 6. It simply provides that a beneficiary's benefits terminate upon the earliest occurrence of one of several

[3] As both the Entergy Benefits Committee and Currier admit, there is no evidence in the administrative record relevant to either the first or the third factors a Court must consider when determining whether a plan administrator's interpretation was legally correct. *See* R. Doc. No. 33-1, at 11-12; R. Doc. No. 37, at 18-19. Accordingly, both factors are neutral and the most important of the three factors—whether the administrator's interpretation is consistent with a fair reading of the plan—controls. *See Briscoe v. Metro. Life Ins. Co.*, No. 16-30354, 2016 WL 7367821, at *2 (5th Cir. Dec. 19, 2016) ("As there appears to be no evidence in the record relevant to the first and third factors, our analysis turns on the second and most important factor: whether MetLife's denial of benefits was consistent with a fair reading of the plan." (quotations omitted)).

terminating events. Although Currier believes that the Plan *should* have taken into account the fact that she qualified for benefits in multiple ways before it terminated her benefits, such a belief should not override the Plan's plain termination language. The interpretation advanced by the defendants does not render the Plan nonsensical, it simply renders the Pilots Plan less employee-friendly than Currier would like it to be.

For the Court to hold, as Currier suggests, that the Plan provides differing terminating events for different beneficiaries depending on the manner in which the beneficiary qualified for benefits would be to reform the Plan. But as the U.S. Supreme Court held in *Amara*, reformation of the plan is an equitable remedy not available under Section 502(a)(1)(B). *Amara*, 563 U.S. at 445. Indeed, it is Section 502(a)(3) which "allows a participant, beneficiary, or fiduciary 'to obtain other *appropriate equitable relief*' to redress violations of . . . parts of ERISA 'or the terms of the plan.'" *Id.* at 438 (quoting 29 U.S.C. § 1132(a)(3)) (emphasis in original). Further, as the Supreme Court also recognized in *Amara*, even if the plan's language unambiguously supports the administrator's decision, a beneficiary may still seek to hold the administrator to conflicting terms in the plan summary through a breach-of-fiduciary-duty claim under § 1132(a)(3). *Id.* at 437-445; *see also Koehler*, 683 F.3d at 189 (recognizing this possibility post-*Amara*).

In short, Section 502(a)(1)(B) does not allow Currier to rewrite the contract. The question under Section 502(a)(1)(B) is whether the Entergy Benefits Committee has given the Pilots Plan a uniform construction that is consistent with a fair reading

of the plan. *See Gomez*, 828 F.3d at 373. Because the Court concludes that it did, "the inquiry is at an end." *Id.*

**CONCLUSION**

For the foregoing reasons,

**IT IS ORDERED** that the motion for partial summary judgment is **GRANTED** and that plaintiff's Section 502(a)(1)(B) claim is **DISMISSED WITH PREJUDICE**.[4]

New Orleans, Louisiana, February 14, 2017.

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**

[4] As the result of this decision, only Currier's Section 502(a)(3) claim remains.